## TEXAS CO. v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.

March 28, 1940.

Albert E. Van Dusen, of New York City (Leo T. Kissam, Albert E. Van Dusen, and J. Francis Hayden, all of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., of New York City, Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Thomas G. Carney, Sp. Assts. to Atty. Gen., for defendant.

MANDELBAUM, District Judge.

This action seeks a refund of social security taxes assessed and paid by the plaintiff. The taxes were assessed pursuant to Title VIII of the Federal Social Security Act of August 14, 1935, 42 U.S. C.A. § 1001 et seq. This act was amended in 1939 and is now known as the "Federal Insurance Contributions Act", 26 U.S.C.A. Int.Rev.Code, § 1400 et seq. The plaintiff paid the taxes for the calendar year 1937 and the first two quarters of 1938. The claim for refund was filed and rejected and this action for $777.66 followed.

Specifically, the assessment was made pursuant to Section 801 and 802(a) of the Federal Social Security Act which deals with "employees' taxes". The basis for the assessment is the government's claim that an employer and employee relationship existed between the plaintiff and one J. E. Thomas of Marion, Virginia from January 1, 1937, to December 31, 1937. In other words, that Thomas and anyone employed by him are employees of The Texas Company for the purposes of the taxing provisions of the Federal Social Security Act.

A contrary position is taken by the plaintiff. It urges that Thomas is an independent contractor; that any individuals engaged by him are his employees and not those of the plaintiff; that in any event, Thomas is not an employee of the plaintiff within the meaning and intent of the Federal Social Security Act. The issue therefore is the determination of the status of Thomas during the period from January 1, 1937, under a consignment agreement entered into between the plaintiff and Thomas for the sale and distribution of the plaintiff's product.

The regulations of the Bureau of Internal Revenue relating to the employees' tax and the employers' tax under Title VIII of the Federal Social Security Act designated as "Regulations 91" and refer to the meaning of employment, employees and employers. It says in part: " * * * *

That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer * * *."

The government claims that a consideration of the consignment agreement read in the light of the aforesaid regulation leads to the conclusion that Thomas is an employee of The Texas Company. The question to be decided is not one of first impression. As recently as February 16, 1940, Judge Briggle of the United States District Court for the Southern District of Illinois, in the case of Indian Refining Company v. Dallman, D.C., 31 F.Supp. 455, 458, had before it the precise question raised in the present action. There the decision was in favor of the plaintiff, holding that the consignee was an independent contractor, and that the plaintiff was under no obligation to pay social security taxes for its consignee.

The government concedes that the facts in the instant case are substantially similar to the facts in the Dallman case and has not attempted to distinguish that case from the one at bar. But it is earnestly submitted that the conclusions reached there are erroneous and this court is asked for an opposite ruling. I might state that while I am not bound by that decision it is entitled to great weight. I have had the benefit of a transcript of the colloquy between court and counsel, as well as a lengthy and carefully reasoned opinion by Judge Briggle.

To consider minutely the terms and conditions of the consignment agreement at bar would serve no useful purpose and would unduly prolong this opinion. Suffice to say that from the agreement and the evidence adduced at the trial, it appears that Thomas is the sole owner of the bulk plant, real estate, tanks and personal property where the plaintiff's product is sold. That Thomas has sole control over the hiring and firing of such employees necessary for the sale and distribution of the plaintiff's product; that Thomas pays all expenses incidental to the operation of the plant, together with advertising; that

Thomas personally paid the social security taxes due with respect to his employees.

The government, on the other hand, submits that Thomas was obliged to account to the plaintiff on forms provided by it; that the plaintiff has an option to terminate the agreement with Thomas on five days' notice, and also an option to buy the land and buildings which runs concurrently with the life of the agreement. It is further contended that if Thomas does anything at variance with the will of The Texas Company, its policies or preferences, the contract may be ended summarily and his plant purchased from him. This is more or less the same situation as in the Dallman case. There, the consignment agreement is exactly the same as the one here marked in evidence. The court there, summarizing the evidence, as well as the terms of the consignment agreement, said:

"The facts brought out in the testimony, together with the facts which have been stipulated by the parties, demonstrate that no control over the means, methods and details of operation by Kolb was reserved by the Indian Refining Company, either by the terms of the consignment agreement or in actual practice. The provisions of the contracts and the actual conduct of the business were directed toward the result to be obtained under the consignment agreements; that is, the amount of the sales. The Indian Refining Company was interested solely in the volume of sales, and had no right, nor in fact did it make any attempt, to control the manner in which the consignee, Kolb, operated his business, except to assist Kolb in securing new sales outlets and in increasing the volume of his sales. The testimony showed that the consignment agreements embodied all of the contractual relations of the parties, and none of the provisions therein gave the consignor any right to control the methods used by Kolb in managing the business or the manner in which Kolb's employees conducted the business. The court finds very little if anything in the relationship between Kolb and the Indian Refining Company that would justify the conclusion that Kolb was an employee of the Indian Refining Company. He is an independent merchant selling nationally advertised products.

\* \* \*

"Under the test, therefore, laid down by the Commissioner of Internal Revenue himself in Regulations 90 and 91, under Titles VIII and IX, it would seem to follow inevitably that Kolb, and his bulk station employees are not employees of the Indian Refining Company."

■ After studying the authorities submitted, especially the cases of Texas Company v. Wheeless, Miss., 187 So. 880, and Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W.2d 620, (both these cases dealt with an unemployment compensation law), I am of the opinion that the ruling of the Dallman case was correct, and that the plaintiff should prevail. From the evidence adduced, both oral and documentary, I find that the plaintiff did not reserve such measure of control over the details of Thomas's business, as would create a relationship of an employer and employee. The fact that the plaintiff might suggest ways and means of increasing the sales of its product does not change the status nor does it make any difference that the plaintiff could terminate the agreement (this was a mutual right). It has been held that even a considerable degree of control does not of itself change the status of an independent contractor into that of a servant. Matter of Litts v. Risley Lumber Co., 224 N.Y. 321, 120 N.E. 730, 19 A.L.R. 1147. I am constrained to hold that Thomas was an independent contractor and not an employee of the plaintiff within "Regulations 91" of the Bureau of Internal Revenue and within the generally accepted normal meaning of the terms.

A word should be said with respect to the case of Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449, cited by the government. I have read it carefully and find it to be a case involving a tort liability. At the opening of the trial, it was agreed that the definition of employment should not be confined to the status one is required to show in tort liability cases (S.M. p. 24). This alone impels me not to give any weight to this case. But, I will, nevertheless, consider it. The court there placed considerable reliance upon facts outside the consignment agreement and held that it was within the power of the consignor as a practical matter to dictate every action of the consignee. This is clearly not our case. See Phillips v. Davidson, D.C., 24 F.Supp. 184, 185.

Judgment is directed for the plaintiff, in accordance with the complaint as amended. Let the plaintiff submit findings on five

days' notice, pursuant to Rule 52 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c and the practice outlined in Detective Comics, Inc. v. Bruns Publications, Inc., D.C., 28 F.Supp. 399.